IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. |
| Plaintiff, | Judge |
| vs. | 21 U.S.C. § 841(a)(1)<br>18 U.S.C. § 2 |
| CHARLES KISTLER, D.O., | **FORFEITURE ALLEGATIONS** |
| Defendant. | **INDICTMENT** |

**The GRAND JURY charges:**

At times material to this Indictment:

## GENERAL ALLEGATIONS

### The Defendant and Relevant Entity

1. Defendant CHARLES KISTLER, D.O. ("KISTLER"), was a licensed Doctor of Osteopathic Medicine in Ohio, credentialed under State of Ohio Medical Board License # 34.002242. KISTLER was registered with federal and state authorities to prescribe Schedule II – V controlled substances.

2. Midtowne Family Practice Centre ("Midtowne") was a medical practice located at 421 Georgesville Road, Columbus, Ohio 43228. KISTLER owned and operated Midtowne and prescribed controlled substances, including highly addictive opioids, through Midtowne.

### The Controlled Substances Act and Code of Federal Regulations

3. The Controlled Substances Act ("CSA"), Title 21, United States Code, Section 841(a) *et seq.* and Title 21, Code of Federal Regulations, Section 1306.04, governed the manufacture, distribution, and dispensation of controlled substances in the United States. The

CSA and the Code of Federal Regulations ("CFR") contained definitions relevant to this Indictment, as set forth below.

4. The term "controlled substance" meant a drug or other substance, or immediate precursor, included in Schedule I, II, III, IV and V, as designated by Title 21, United States Code, Section 802(c)(6), and the CFR. The designation "Schedule II" meant the drug or other substance had a high potential for abuse; the drug had a currently accepted medical use with severe restrictions; and abuse of the drug or other substance may have led to severe psychological or physical dependence. The designation "Schedule IV" meant the drug or other substance had a low potential for abuse relative to substances that were listed as Schedule II. However, concurrent use of some controlled substances and Schedule IV controlled substances greatly increased a patient's risk of overdose and death.

5. Hydrocodone was a Schedule II controlled substance. Tramadol was a Schedule IV controlled substance.

6. The term "dispense" meant to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance. The term "distribute" meant to deliver (other than by administering or dispensing) a controlled substance.

7. The term "practitioner" meant a medical doctor, physician, or other individual licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which she or he practiced, to dispense a controlled substance in the course of business.

8. The Drug Enforcement Administration ("DEA") issued registration numbers to qualifying practitioners, including physicians, who thereby became authorized to dispense

2

Schedule II, III, IV, and V controlled substances.

9. The term "prescription" meant an order for medication which was dispensed to or for a user but did not include an order for medication which was dispensed for immediate administration to the user. Title 21, Code of Federal Regulations, Section 1306.04, provided that "[a]ll prescriptions for controlled substances shall be dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner."

10. Under the CSA and CFR, a prescription for a controlled substance was unlawful unless issued for a legitimate medical purpose by a practitioner acting in the usual course of professional practice.

## COUNTS ONE THROUGH EIGHT

UNLAWFUL DISTRIBUTION OF CONTROLLED SUBSTANCES

11. Paragraphs 1 through 10 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

12. On or about the dates set forth below, in the Southern District of Ohio, and elsewhere, the defendant, CHARLES KISTLER, did knowingly, intentionally, and unlawfully dispense and distribute, and cause to be dispensed and distributed, outside the usual course of professional practice and not for a legitimate medical purpose, the controlled substances listed below, each of which constitutes a separate count of this Indictment:

| Count | Patient | Approximate Date of Written Prescription | Controlled Substance |
|---|---|---|---|
| 1 | E.P. | 2/19/2020 | Tramadol |
| 2 | A.B. | 12/19/2017 | Hydrocodone |
| 3 | J.B. | 3/15/2019 | Hydrocodone |
| 4 | J.B. | 7/2/2019 | Hydrocodone |
| 5 | S.B. | 2/11/2019 | Hydrocodone |
| 6 | S.B. | 11/21/2019 | Hydrocodone |
| 7 | K.H. | 5/21/2019 | Hydrocodone |
| 8 | P.H. | 12/1/2020 | Hydrocodone |

**In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(b)(2) and 18 U.S.C. § 2.**

**FORFEITURE ALLEGATIONS**

13. The allegations contained in Counts 1 through 8 of this Indictment are incorporated here for the purpose of alleging forfeiture pursuant to the provisions of Title 21, United States Code, Section 853.

14. Upon conviction of a violation of Title 21, United States Code, Section 841, as alleged in Counts 1 through 8 of this Indictment, the defendant CHARLES KISTLER shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses.

15. The property to be forfeited includes, but is not limited to, the following:

    a. any property, real or personal, that constitutes or is derived, directly or indirectly, as the result of such violation;

    b. any DEA license(s) for KISTLER; and

    c. any of the defendant's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

4

16. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

  i. cannot be located upon the exercise of due diligence;

  ii. has been transferred or sold to, or deposited with, a third party;

  iii. has been placed beyond the jurisdiction of the Court;

  iv. has been substantially diminished in value; or

  v. has been commingled with other property that cannot be subdivided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

s/Foreperson

_____
FOREPERSON

KENNETH L. PARKER
United States Attorney

JOSEPH S. BEEMSTERBOER
Acting Chief
Criminal Division, Fraud Section
United States Department of Justice

s/Christopher M. Jason
_____
CHRISTOPHER M. JASON
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice

5