# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:22-cr-067** |
| **v.** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **CHARLES KISTLER,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before this Court on Defendant's Motion *in limine* (ECF No. 22) and the Government's Motion *in limine* (ECF No. 27). The Court issued oral decisions on the motions at the Friday, January 27, 2022 Final Pretrial Conference, but sets forth its reasoning more fully herein. For the following reasons, this Court **GRANTS in part** and **DENIES in part** Defendant's Motion. The Government's Motion is **GRANTED in part** and **DENIED in part**.

## I.      BACKGROUND

On April 28, 2022, a Grand Jury returned an eight-count indictment against Defendant Charles Kistler, D.O. (ECF No. 2). Pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(b)(2) and 18 U.S.C. § 2, Defendant is charged with eight counts of prescribing Tramadol and Hydrocodone on eight separate dates to six patients outside of the usual course of professional practice and not for legitimate medical purposes. (*Id.*, ¶ 12). Further, should Defendant be convicted, the Government seeks forfeiture of any property or proceeds obtained for and through the commission of the offenses. (*Id.*, ¶ 14).

The Government argues that Defendant owned and operated a medical practice, Midtowne Family Practice Centre ("Midtowne"), in Columbus, Ohio through which he prescribed controlled

substances, including highly addictive opioids, to individuals. (*Id.*, ¶ 2). The Government maintains that Defendant prescribed Hydrocodone, a "Schedule II" controlled substance, and Tramadol, a "Schedule IV" controlled substance, to the patients named in the Indictment. (*Id.*, ¶ 5). The Government alleges that a "Schedule II" classification means the drug or other substance had a high potential for abuse; the drug had severely restricted accepted medical use; and abuse of the drug or other substance could lead to severe psychological or physical dependence. (*Id.*, ¶ 4). Further, the Government alleges a "Schedule IV" classification means the drug or other substance had a low potential for abuse compared to "Schedule II" controlled substance, but concurrent use of "Schedule II" controlled substances and "Schedule IV" controlled substances greatly increased a patient's risk for overdose and death. (*Id.*).

On January 13, 2023, Defendant filed a Motion *in limine* asking this Court to exclude any evidence relating to patients not named in the Indictment, including those discussed in a report authored by Dr. Timothy King, M.D., entitled "Expert Review," and dated September 17, 2021, that was disclosed in discovery. (ECF No. 22 at 2). The Government responded on January 20, 2023. (ECF No. 31). Also on January 13, 2023, the Government filed a Motion *in limine* asking this Court to admit: (1) evidence related to the fatal overdose and separate non-fatal overdose of two of Defendant's patients named in the Indictment; (2) evidence of Defendant's controlled substance prescription data across all patients, including those uncharged; (3) evidence of Defendant's statements to the Ohio State Medical Board during investigations of his practice; and (4) evidence that the Medical Board recommended Defendant take prescribing and record keeping classes and that Defendant took those classes. (ECF No. 27).

The parties were instructed to submit responses to Motions *in limine* one week prior to the Final Pretrial Conference. (ECF No. 14 at 4). The Final Pretrial Conference occurred on January

27, 2023, and all responses or objections, if any, were due on January 20, 2023. The Defendant did not file a written response or objection to the Government's Motion *in limine*. The Defendant objected orally to the Government's Motion *in limine* at the Final Pretrial Conference.

## II.     STANDARD OF REVIEW

### A.  Motions in Limine

The purpose of a motion *in limine* is "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). "It is well established that "[w]hether or not to grant a motion in limine falls within the sound discretion of the trial court." *Delay v. Rosenthal Collins Grp., LLC*, No. 2:07-cv-568, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012) (citing *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012)). The guiding principle is "to ensure evenhanded and expeditious management of trials." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

Courts should "exclude evidence on a motion *in limine* only when that evidence is determined to be clearly inadmissible on all potential grounds." *Delay*, 2012 WL 5878873, at *2. Thus, "[w]hen a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Id.* Orders *in limine* which exclude broad categories of evidence should seldom be employed. The better practice is to deal with questions of admissibility as they arise. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Morrison v. Stephenson*, No. 2:06-cv-283, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008) ("Courts ... are generally reluctant to grant broad exclusions of evidence *in limine*, because a court is almost always better situated during the actual trial to assess the value and utility of evidence."). "Whether or not to grant a motion *in limine* falls within the

3

sound discretion of the trial court." *Delay*, 2012 WL 5878873, at \*2. Additionally, "[a] ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). Thus, this Court "may change its ruling at trial for whatever reasons it deems appropriate." *Id.*

### B. Applicable Rules of Evidence

Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant, and therefore generally admissible, so long as it "has any tendency to make a fact more or less probable," and so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. It is well established that "[t]he standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (internal citation omitted). "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant." *Id.* at 401. Additionally, evidence can be relevant even if it does not relate to a fact in dispute, provided the evidence supplies background information about a party or issue. *See* Fed. R. Evid. 401 Advisory Committee's Notes ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."). Assuming evidence is relevant, Rule 403 nonetheless grants trial courts discretion to exclude that evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Sixth Circuit has consistently held that the level of unfair prejudice necessary to exclude otherwise relevant evidence is a high bar and must be the type of evidence to "suggest a decision made on an improper basis." *United States v. Johnson*, 581 F. 3d 320, 327 (6th Cir. 2009).

4

Generally, hearsay is inadmissible, unless an exception to the hearsay rule applies. Fed. R. Evid. 801, 802. Evidence that would constitute hearsay for one use may be considered excluded from the definition of hearsay altogether in other instances. For example, a statement by a party opponent offered against that opponent is considered "not hearsay," but that same statement offered by the party that made the statement fits squarely within the general prohibition. *Id.*

Additionally, relevant evidence of character, character trait, or other acts is likewise inadmissible under Rule 404 "to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "[E]vidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

### III.    LAW & ANALYSIS

#### A.  Government's Motion *in limine*

##### *1.  Evidence Related to Patient Overdose*

The Government seeks to admit evidence related to the fatal overdose of J.B., Defendant's patient named in Counts 3 and 4 of the Indictment. (ECF No. 27 at 2–9). The Government alleges that J.B. saw Defendant for neck and back pain for the 5.5 years preceding his death, during which Defendant proscribed J.B. 112 doses of hydrocodone-acetaminophen 7.5-325 ("Norco") and 84 doses of gabapentin, per prescription. (*Id.* at 2). The Government argues that Defendant prescribed J.B. Norco on two separate instances—one two days prior to the fatal overdose—despite his patient file noting he had a history of alcohol and prescription drug use, a criminal record, and aberrant social behavior. (*Id.* at 2–3). Following J.B.'s death in July 2019, the Government maintains that the Franklin County, Ohio Coroner subpoenaed Defendant's patient file for J.B. (*Id.* at 3). Further,

the Coroner concluded that J.B.'s death was an accidental overdose, and a blood test confirmed the presence of illicit and controlled substances including Hydrocodone.

The Government also seeks to admit evidence related to the non-fatal overdose of K.H., Defendant's patient named in Count 7 of the Indictment. The Government maintains that since at least August 2016, Defendant proscribed K.H. Norco, Valium, and zolpidem tartrate 10 mg ("Ambien") without improvement in her pain or treatment goals, and which the Government argues is a polypharmacy[1] combination. (*Id.* at 4). The Government alleges that K.H.'s patient file included notations about her mental health concerns. (*Id.*). Further, the Government states that K.H. overdosed on oxycodone provided by her boyfriend in July 2018. (*Id.*). Amongst her belongings, however, the police found a misspelled, prescription for Norco, prescribed by Defendant, suggesting it was forged or the prescribing physician had an age-related impairment. (*Id.*). Subsequently, the Ohio State Medical Board opened a complaint against Defendant, interviewed Defendant in March 2019, and advised Defendant of K.H.'s overdose. (*Id.* at 5). The Government alleges that although Defendant told Medical Board investigators that he would speak to K.H. about the overdose and refer her to a mental health specialist, Defendant never noted it in her medical file and prescribed her 112 doses of Norco, 84 doses of Valium, and 28 doses of Ambien at her next two visits in April and May of 2019.[2] (*Id.*).

The Government argues that a patient's fatal overdose and Defendant's knowledge of a patient's overdose "are *res gestae* evidence, as it is inextricably linked to the charged offenses of 28 U.S.C. § 841(a)" and are offered to demonstrate that Defendant "prescribed outside the usual course of professional practice and not for a legitimate medical purpose." (*Id.* at 6–7) (citing *United*

---

[1] Polypharmacy refers to the simultaneous use of multiple drugs to treat a single ailment or condition. *Polypharmacy*, Merriam-Webster Dictionary (2023).
[2] It should be noted that only the prescription issued by Defendant to K.H. in May 2019 is included in the Indictment. (ECF No. 2 at 4).

*States v. Hofstetter*, No. 3:15-cr-27, 2019 WL 6718489, at *5 (E.D. Tenn. Dec. 9, 2019) (finding evidence of an uncharged patient's fatal overdose was relevant if the deceased patient was prescribed by a provider defendant and died shortly thereafter because it had a tendency to suggest that "the provider defendant knew or was deliberately ignorant of the fact that patients might be misusing prescriptions and overdosing"). In conjunction with the introduction of the evidence of the death of J.B., the Government proposes that the Court give the following instruction:

> You have also heard evidence that one of the Defendant's patients, J.B., died. The government has not alleged that the Defendant's prescribing was the "but for" or sole cause of J.B.'s death. Accordingly, you may only consider evidence of uncharged patient deaths to determine whether a defendant knowingly or intentionally prescribed controlled substances without a legitimate medical purpose outside the usual course of professional practice. You may not consider whether the defendant directly caused the death of the patient.

(ECF No. 25 at 41).

### a. J.B.'s Fatal Overdose

First, this Court must assess whether evidence of J.B.'s fatal overdose is relevant. The Government argues it is relevant because it speaks to whether Defendant knew his prescriptions had an illegitimate medical purpose. The Supreme Court recently ruled in *Ruan v. United States* that in an action for violation of 21 U.S.C. § 841(a), where the Defendant demonstrates that his conduct was authorized, the Government must prove beyond a reasonable doubt that the defendant "knowingly or intentionally acted in an unauthorized manner." 142 S.Ct. 2370, 2382 (2022). The Government's Motion fails to argue, however, that Defendant knew that J.B.'s death was caused by an overdose. The Government states that J.B.'s medical record was subpoenaed by the County Coroner, but the Government does not allege that Defendant was notified that J.B.'s death was caused by an overdose. This lack of information is particularly significant given the Supreme Court's recent ruling on the *mens rea* required for a § 841 conviction. Therefore, this Court cannot

7

conclude that J.B.'s death was relevant to Defendant's prescribing state of mind if this Court lacks information about Defendant's knowledge of J.B.'s death.

Even if this Court were to assume evidence of J.B.'s fatal overdose was relevant, the Court excludes this evidence under FRE 403. *See United States v. Libbey-Tipton*, 948 F.3d 694, 705 (6th Cir. 2020) (explaining that a district court enjoys "broad discretion" in conducting the Rule 403 balancing test). First, this evidence has a very low probative value because J.B.'s death took place after Defendant prescribed J.B. the medication. Therefore, this evidence cannot provide this Court or a jury with information regarding Defendant's knowledge about whether the prescriptions were authorized. *See United State v. Romano*, Case No. 2:19-cr-202, ECF No. 69 at 3 (S.D. Ohio 2022) (quoting *United States v. Robinson*, 263 F. Supp. 3d 248, 251 (D.D.C. 2017) ("Health events that occurred after Defendant issued a prescription do not speak in any significant way to the propriety of Defendant issuing those prescriptions in the first place.")). Finally, Defendant is charged with unlawfully prescribing controlled substances, not with the death of J.B., further minimizing its probative value.

Additionally, evidence of J.B.'s fatal overdose poses a significant risk of unfair prejudice. Unfair prejudice can involve the risk that a "prior act may cause the jury to reach a verdict based on emotions instead of evidence." *United States v. Asher*, 910 F. 3d 854, 861–62 (6th Cir. 2018). This can occur where the prior-act evidence so shocks the conscience that a jury may decide that the Defendant is a bad person and should be convicted, even if his guilt were unproven in the instant case, "because a bad person deserves punishment." *Old Chief v. United States*, 519 U.S. 172, 181 (1997). The evidence of J.B.'s death could be highly inflammatory and creates a risk that the jury will assume a "pattern of behavior and convict for individual counts that were not properly proved." *Hofstetter*, 2019 WL 6718489, at *6 (citing *United States v. Kostenko*, No. 5:16-cr-221,

2017 WL 139550, at *2 (S.D. W. Va. Apr. 17, 2017)). Further, this evidence risks misleading the jury and distracting from the offenses at issue here, which do not involve the death of J.B. Therefore, this Court **DENIES** the Government's Motion with respect to evidence of J.B.'s fatal overdose as excluded under FRE 403.

### b.  K.H.'s Overdose

Conversely, K.H.'s overdose is relevant because Defendant was notified of the event by an Ohio Medical Board investigator and committed to discussing the event with K.H. and recommending she see a mental health specialist. The Government alleges, however, that Defendant never made note of the overdose in K.H.'s patient file and continued to prescribe her a dangerous combination of controlled substances without any actions to address K.H.'s addictive behavior. The approximate date Defendant wrote K.H. the prescription for Hydrocodone at issue in Count 7 is May 21, 2019, a little less than a year after her reported overdose on July 13, 2018 and two months after the Medical Board notified Defendant of K.H.'s overdose on March 5, 2019. (ECF No. 27 at 4 –5). While the Government does not allege that the medications prescribed by Defendant actually caused K.H.'s overdose, the evidence does speak to whether Defendant knew or was deliberately ignorant of the fact that his patients were misusing their prescriptions prior to writing K.H. the prescription at issue in Count 7—a key element required to establish a violation of § 841. Fed. R. Evid. 401. For the same reasons, this evidence has substantial probative value as it goes to the Defendant's state-of-mind when prescribing controlled substances to a patient named in the Indictment.

Additionally, evidence of K.H.'s overdose meets the *res gestae*, or intrinsic evidence, exception to the prohibition on evidence of other crimes or wrongs established in Federal Rules of Evidence 404(b). *Res gestae* evidence "consists of those other acts that are inextricably intertwined

with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Harris*, No. 20-cr-2033, 2021 WL 4988348, at *2 (6th Cir. 2021) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). *Res gestae* evidence must have a "causal, temporal, or spatial connection with the charged offense" and typically arises from "the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.*; *see also United States v. Passarella*, 778 F.2d 377, 383 (6th Cir. 1986) (admitting as res gestae evidence testimony concerning drug deals that occurred in 1979 for the purpose of proving "the existence of a larger continuing plan, scheme or conspiracy" by Defendants to participate in the crimes which were the subject of the indictment). Because knowledge is a critical element in establishing a violation of § 841(a), evidence that Defendant knew of K.H.'s overdose, yet still continued to prescribe her a combination of drugs outside the usual course of business, as alleged by the Government, helps complete the story of the charged offense. Unlike evidence of J.B.'s fatal overdose, evidence of K.H.'s non-fatal overdose does not risk inflaming the emotions of the jury in the same manner and is highly probative of Defendant's knowledge of K.H.'s history of drug abuse and state-of-mind when writing her future prescriptions. Therefore, this Court **GRANTS** the Government's Motion with respect to evidence of K.H.'s overdose.

### 2. Data on Defendant's Controlled Substance Prescribing Practices

The Government also seeks to admit evidence of Defendant's controlled substance prescription data across all of his patients, even those not included in the indictment, during the relevant time period, arguing it shows Defendant's intent, plan, and absence of mistake. (ECF No. 27 at 10). Specifically, the Government intends to call two witnesses who reviewed Defendant's prescription data: (1) Ryan Bolus, a Doctor of Pharmacy previously employed by the State of Ohio

Board of Pharmacy as a Compliance Specialist; and (2) Paul Short, a DEA Document and Media Exploitation ("DOMEX") Division analytics representative. (*Id.*). The Government states that Dr. Bolus will testify that Ohio pharmacies must report prescriptions to a searchable database that allows medical practitioners to check if their patients are receiving controlled substances from other doctors. (*Id.*). Dr. Bolus intends to testify that he reviewed Defendant's prescription data and believes Defendant fails to take an individualized approach to his patients' needs and has "aberrant polypharmacy prescribing practices." (*Id.*). Mr. Short intends to testify to DEA and law enforcement practices to spot "red flag" prescribing practices, and the red flags he identified in Defendant's pattern of "prescribing high doses of opioids." (*Id.* at 11). The Government states that an analytical summary created by the DEA based on the information provided in discovery, will be provided to Defendant prior to trial. (*Id.*).

Further, during the Pretrial Conference, the Government represented to this Court that it seeks to admit evidence of Defendant's entire prescription data to demonstrate the rate at which Defendant prescribed Hydrocodone and Tramadol as compared to other controlled substances. Further, the Government asserted that this data is necessary to demonstrate why law enforcement first flagged Defendant's prescription practices for further investigation, and to argue that Defendant's prescribing practices did not conform to industry norms. Defense Counsel responded that it is highly prejudicial to admit evidence of Defendant's prescription data for medications not named in the Indictment. Additionally, Defense Counsel argued that to admit this prescription data suggests to a jury that the other controlled substances prescribed by Defendant were also inappropriate, even though they were not named in the Indictment.

Evidence of prior bad acts or wrongs is generally not admissible when used to prove a person acted in accordance with a character trait on a particular occasion. Fed. R. Evid. 404(b)(1).

11

There are exceptions, however, for this type of evidence where it is used to prove, "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at (b)(2). When deciding whether evidence is admissible as an exception to Rule 404(b)(2), this Court must use the following process:

> *First,* the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second,* if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Adams*, 722 F.3d 788, 822 (6th Cir. 2013) (internal quotations and citations omitted). To determine whether evidence is probative of a material issue other than character, it must be (1) offered for an admissible purpose, (2) material, and (3) probative with regard to the purpose for which it is offered. *United States v. Johnson*, 129 Fed. App'x 966, 969 (6th Cir. 2005).

Here, the Government satisfies step one because Defendant's prescription data is maintained by Ohio's Automated Rx Reporting System ("OARRS"), which serves as the state's Prescription Drug Monitoring Program ("PDMP"). This system is separate from Defendant's own patient files, and Defendant does not challenge the validity of its record keeping. Further, the Government alleges that Dr. Bolus will testify that Ohio pharmacies are required to submit accurate data to the database.

Next, this Court must assess whether the evidence is probative of a material issue other than character. The Government alleges it offers the evidence to demonstrate Defendant's intent, plan or scheme, and absence of mistake in prescribing the controlled substances detailed in the Indictment. To determine whether the evidence bears on intent, "we look to whether the evidence relates to conduct that is substantially similar and reasonably near in time to the specific intent offense at issue." *United States v. Carter*, 779 F.3d 623, 625 (6th Cir. 2015); *see also United States*

12

*v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) (explaining that "where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent"). Defendant's controlled substance prescribing data for Hydrocodone and Tramadol, from the relevant time period, is conduct substantially similar to the eight prescriptions for controlled substances charged in the Indictment. A complete understanding of these prescriptions written by Defendant is relevant to the jury's consideration of the charges against him because it is probative of whether the prescriptions were prescribed outside the usual course of professional practice and without legitimate medical purpose. This evidence bears on Defendant's specific intent. Therefore, it is admissible under this exception to the prohibition on prior acts evidence.

It is well established in the Sixth Circuit, that "[s]omething more than repeated performance of the same class of crimes is required in evidencing a [common scheme or plan] which, if proved, may raise the inference that the accused was the perpetrator of the crime in question." *United States v. Joseph*, 270 Fed. App'x 399, 404 (6th Cir. 2008) (quoting *United States v. Phillips*, 599 F.2d 134, 136 (6th Cir. 1979)). At this stage, the Government fails to provide evidence, however, that supports the inference that when Defendant prescribed these controlled substances, he had hatched a plan or scheme to commit the crimes with which he is charged in the Indictment. The Government has only alleged that Defendant committed the same class of crimes, but not that there was an overarching plan furthering those crimes. Therefore, it is premature for this Court to rule on the admissibility of this evidence on this ground.

Finally, the Government argues that this evidence is asserted to demonstrate absence of mistake. It is well established, however, that evidence is only admissible for the purpose of showing absence of mistake or accident where the defendant has asserted a defense based on some

kind of accident or mistake. *United States v. Newsom*, 452 F.3d 593, 606 (6th Cir. 2006). As Defendant has yet to assert such a defense, it is premature for this Court to rule on the admissibility of this evidence under this exception.

For the foregoing reasons, this Court **GRANTS in part** and **DENIES in part** the Government's Motion. Evidence of all of Defendant's prescription data for controlled substances associated with patients named in the Indictment and those not named is **ADMITTED but limited** to: (1) prescription data from 2017–2020, which is the time period relevant to the Indictment; and (2) prescription data for Hydrocodone and Tramadol, not any other controlled substance, that Defendant prescribed during the relevant time period. Further, the parties have stipulated to and will propose a limiting instruction for the jury with regards to this evidence. Said limiting instruction is to be submitted to this Court on or before **Monday, February 6, 2023**.

### 3. *Defendant Statements to State Medical Board of Ohio*

The Government seeks to admit: (1) signed, written responses to a series of interrogatories about Midtowne's treatment modalities and drug abuse screenings the Ohio Medical Board requested from Defendant following four complaints lodged against him related to patient overdoses and excessive prescribing of pain medication in 2010; and (2) statements made by Defendant in 2019 to an Ohio Medical Board Investigator committing to properly reviewing Ohio's prescription drug monitoring database and discussing K.H.'s overdose with her. (ECF No. 27 at 16). As previously detailed, the Government alleges that there is no record of Defendant's discussion with K.H. and that he kept prescribing her a dangerous combination of drugs for years after learning of her overdose. (*Id.*). The Government argues that this evidence is admissible as a party-opponent statement and relevant, intrinsic evidence. (*Id.* at 13).

14

The Government seeks to admit Defendant's out-of-court statements for the truth of the matter asserted. While this type of evidence would typically constitute hearsay, party-opponent admissions offered against that same party are non-hearsay under the FRE. Admission of a party-opponent's statement is not dependent on whether the out-of-court statement is inculpatory or exculpatory but must simply "include some specific fact which tends to establish guilt or some element of the offense." *United States v. Turner,* 995 F.2d 1357, 1363 (6th Cir.), *cert. denied,* 510 U.S. 904 (1993).

Defendant's written answer to the Ohio Medical Board's interrogatories constitutes party-opponent statements. First, Defendant signed the written answers to the interrogatories he provided to the Ohio Medical Board about Midtowne's treatment modalities and drug abuse screening procedures, attesting to their truthfulness. Therefore, this information constitutes a party-opponent statement because it was made by Defendant either in his individual capacity, or if prepared by legal counsel, one that he adopted as his own with his signature. Fed. R. Evid. 801(d)(2)(A)-(B). Second, the information provided therein is relevant to this litigation because it provides background information about Defendant's prescribing practices at Midtowne, which are at issue in this case. Finally, party-opponent statements constitute non-hearsay because they are the product of the adversary system rather than satisfaction of the conditions of the hearsay rule. *See* Fed. R. Evid. 201(d)(2), Advisory Committee Notes for 1972 Proposed Rule, Note to Subdivision (d)(2). Therefore, Defendant can challenge its relevance and validity at trial. Accordingly, this Court **GRANTS** the Government's Motion to Admit the written answers to Questions 6 and 10 of the interrogatories that Defendant provided to the Ohio Medical Board in 2010.

The Government also seeks to admit Defendant's 2019 statements to the Ohio Medical Board investigator that: (1) he was committed to checking and updating his patient files as required

by Ohio regulations; and (2) he would speak with K.H. about her overdose and refer her to a mental health specialist. Statement two is addressed *supra* and admitted as *res gestae*, intrinsic evidence. The first statement, that Defendant was committed to checking and updating his patient files as required by Ohio regulation is also admissible as a party-opponent statement. First, Defendant made the statement in his individual capacity, and therefore, it can be introduced by the Government against him. Fed. R. Evid. 801(d)(2)(1). Second, the evidence is relevant to the proceedings because it goes to Defendant's knowledge that the Ohio Medical Board had raised concerns regarding his recordkeeping and prescribing practices. Finally, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice, confusion, misleading, the jury, nor wasting this Court's time. The investigations conducted by the Ohio Medical Board and the conversations Defendant had with the Board's investigator are probative of the charged offenses, which require proof of Defendant's knowledge or intentional disregard. Therefore, the Government's Motion to admit Defendant's 2010 and 2019 statements to the Ohio Medical Board is **GRANTED.**

### 4.  *Medical Board Recommendations for Prescribing Courses*

Finally, the Government seeks to submit evidence that in both 2010 and 2020, the Ohio Medical Board recommended Defendant attend a records keeping and prescribing course to demonstrate that Defendant was aware his prescription practices were out of the norm. (ECF No. 27 at 19–20). The parties have represented that Defendant completed those courses. Although the Medical Board closed both investigations without further action, the Government alleges that the 2019 investigation found that Defendant inappropriately prescribed controlled substances to his patients at a rate much greater than his peers. (*Id.* at 19–20).

16

The evidence that Defendant attended the courses is admissible for three reasons. First, it is admissible as res gestae, intrinsic evidence because it has a causal relationship to the charged offenses and helps complete the Government's allegations that Defendant prescribed controlled substances outside of the regular course of business. *Harris*, 2021 WL 4988348, at *2. Second, it is admissible under the knowledge exception to Rule 404(b) because it is probative of the Government's allegations that Defendant's record-keeping and prescribing methods were sufficiently out of the norm that the Ohio Medical Board asked him to take corrective action. Finally, the probative value of the evidence is not substantially outweighed by its prejudicial effect. While it also demonstrates Defendant's state-of-mind when prescribing controlled substances, it is not unnecessarily duplicative, but suggests another situation which could have made Defendant aware that his prescribing practices were out of the norm. Therefore, this Court **GRANTS** the Government's Motion with respect to this issue.

### B. Defendant's Motion *in limine*

Defendant seeks to exclude all evidence related to patients not included in the indictment, including that contained in Dr. King's "Expert Review." Defendant alleges that Dr. King's "Expert Review" makes conclusions about Defendant's conduct based on information linked to patients and incidents not detailed in the Indictment. (ECF No. 22 at 2). Defendant argues that because the report precedes the Indictment, the Government would have included the information regarding Defendant's other patients as part of the Indictment if they believed there was sufficient evidence to bring additional charges. (*Id.*). Defendant alleges that the evidence is inadmissible because it involves information regarding patients not named in the Indictment, and Defendant was not provided sufficient notice to rebut the wrongdoing alleged in the report. (*Id.* at 4). Further, Defendant maintains that the report constitutes inadmissible character evidence, and that it is

17

prejudicial to Defendant. (*Id.* at 3). Specifically, Defendant argues that admitting the report: (1) risks substantial confusion as the information and data contained therein is not individual analysis of the named and unnamed patients but makes general conclusions; and (2) contains the personal information of Defendant's patients. (*Id.* at 3). Therefore, Defendant implores this Court to exclude the evidence.

### 1. Notice

The Government responds that the Indictment provided Defendant sufficient notice of the charges against him. (ECF No. 31 at 2). Additionally, it argues that its Motion *in limine* was filed more than three weeks before trial begins and provided written notice to the Defendant of the Government's intent to introduce Defendant's prescription data across all patients. (*Id.* at 4). Therefore, the Government maintains that sufficient notice was given to Defendant as required for "Other Acts" evidence by FRE 404(b). (*Id.* at 2, 4).

Under FRE 404(b)(3), in criminal cases, the prosecutor must provide the defense reasonable notice of any evidence the prosecutor intends to offer at trial related to other crimes, wrongs or acts. Fed. R. Evid. 404(b)(3). While the rule does not define reasonable, it does state that notice should occur before trial, unless "good cause[] excuses lack of pretrial notice." *Id.* at (b)(3)(C). Courts have held that notice of less than one month before trial constitutes "reasonable notice" under Rule 404(b). *See, e.g.*, *United States v. Paul*, 57 Fed. App'x 597, 607 (6th Cir. 2003) (notice of intent to use Rule 404(b) evidence one week before trial was reasonable); *United States v. Kern*, 12 F.3d 122, 124 (8th Cir. 1993) (same); *United States v. Fennell*, 496 F. Supp. 2d 279, 284 (S.D.N.Y. 2007) (explaining that the government's agreement to disclose Rule 404(b) evidence two weeks before trial was sufficient); *United States v. O'Malley*, Case No. 1:20-cr-395, 2020 WL 2187126, at *1 (N.D. Ohio Jun. 17, 2022) (same); *United States v. Pelini*, 896 F. Supp.

18

795, 797 (N.D. Ill. 1995) ("Regarding Rule 404(b), the government has agreed to provide said notice three weeks before trial, which satisfies the Rule 404(b) reasonableness requirement.").

In response, the Government states that they do not intend to admit Dr. King's report, but only intend to call Dr. King to testify about his review of the patient files of those named in the Indictment. (ECF No. 31 at 3–4). Further, the Government states that they do not intend to present evidence about any specific patient not named in the Indictment or any wrongdoing outside the scope of the Indictment, unless that evidence has been admitted pursuant to FRE 404(b). As discussed in their Motion *in limine*, however, the Government does seek to introduce all of Defendant's prescription data pursuant to 404(b). (ECF No. 27 at 10). While this evidence might not be an exact match to that contained in Dr. King's report, it derives from the same data regarding patients not named in the Indictment. Therefore, it must meet the notice requirements of Rule 404(b). Because the Government filed their Motion in Limine seeking to admit Defendant's prescription data for all patients three weeks before trial is set to begin, reasonable notice was given to Defendant.

### 2. Patient Data Not Named in Indictment

The Government responds that the evidence it wishes to introduce is tailored to the allegations in the Indictment because it originates from patient files and Defendant's statements. (ECF No. 31 at 3). The Government reiterates, as stated in its own Motion *in limine* (ECF No. 27), it will not admit the report written by Dr. King nor any evidence specific to a patient not named in the Indictment or of wrongdoing outside the scope the Indictment, not admitted pursuant to Rule 404(b). (*Id.* at 3–4). While it does not seek to admit the report, it does seek to admit the prescribing data on which the report was based—much of which involves patients not included in the

Indictment. As this Court has already addressed this issue when ruling on the Government's Motion *in limine*, it warrants no further analysis here.

## IV.    CONCLUSION

For the foregoing reasons, this Court **GRANTS in part** and **DENIES in part** Defendant's Motion. The Government's Motion is also **GRANTED in part** and **DENIED in part**. The limiting instruction for the evidence of Defendant's controlled substance prescription data is to be submitted to this Court on or before **Monday, February 6, 2023**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  January 30, 2023**

20